IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-173 |
| | ) | |
| v. | ) | Judge Flowers Conti |
| | ) | Magistrate Judge Caiazza |
| GENERAL HYDROGEN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment (Doc. 21) be granted regarding liability, but denied regarding damages.

**II.   REPORT**

In this diversity action, the Plaintiff ("CSX") brings suit against the Defendant ("GHC") to recover unpaid rail freight and supplemental charges incurred pursuant to the parties' railroad transportation contract ("the Contract").  *See generally* Compl.; Pl.'s Br. (Doc. 22) at 1.  CSX has moved for summary judgment, claiming GHC owes a balance of $188,449.10.  *See* Pl.'s Br. at 1. In support of the Motion, CSX has filed an affidavit attaching the Contract, an amendment thereto, and numerous invoices billed to GHC.  *See* Doc. 22-4 and attachments thereto.

The Defendant concedes liability, but claims it owes less than CSX demands.  *See* Def.'s Opp'n Br. (Doc. 23) at 5

("[w]ith correct accounting, the amount owed would be less than $100,000 and may be as low as $50,000"). Counsel raises several objections to the Plaintiff's bill. *See id.* at 2-6. As seen below, some of the objections are without merit, but others preclude the court from finding an absence of material disputed fact. Accordingly, the District Court may grant summary judgment regarding liability, reject some of the Defendant's objections outright, and order the parties to mediate damages before the undersigned based on the guidance provided herein.

One central theme of the Defendant's opposition is its failure to sign an amendment to the Contract allowing for a rate increase. *See generally id.* at 2, 3-4. The original Contract, signed by GHC, covered the time period of July 1, 2002 until June 30, 2003. *See* Contract (filed as Doc. 22-2) at 1. Among other things, the Contract: specified "[r]ates [p]er [c]ar"; directed that "[a]ny claims for loss, damage or delay to [c]ommodity shipments" were governed by 49 U.S.C. § 11706 and 49 C.F.R. § 1005; and contemplated that "[a]ncillary charges, including fuel surcharges, contained in CSXT Tariff 8100(Merchandise)/8200(Coal)-Series as of the date of shipment tender shall apply." *Id.* at 1-3.

CSX's affiant states on personal knowledge that, when the Contract term expired, the parties extended the agreement by one year under an amendment covering July 1, 2003 until June 30, 2004

-2-

("the Amendment"). *See* Aff. (filed under Doc. 22-4) at ¶ 6; *see also* Amendment (filed under Doc. 22-3). Among other things, the Amendment: added Canadian National Railways ("Canadian National") as a carrier; provided for rate increases; and added a provision to the "[p]ayment" section allowing for "the imposition of finance charges" in the event of untimely payment "pursuant to CSXT Tariff 8100 Series." *Id.* at 1-2.

In opposing summary judgment, the Defendant makes no showing that it was unaware of the Amendment or rejected it;[1] rather, GHC complains only that the Amendment went unsigned. *See* Def.'s Opp'n Br. at 2-4. The law of contracts is clear, however, that "signatures are not required unless such signing is expressly required by law or by the intent of the parties." Firetree, Ltd. v. Department of Gen'l Servs., 920 A.2d 906, 911 (Pa. Commw. 2007) (citation omitted); *see also* 16 Summ. Pa. Jur. 2d Commerc. Law § 1:62 (2006) ("the mere presence of signature lines does not determine whether the parties intended to be bound

---

[1] Although counsel asserts that GHC President Eileen Zullo was unaware of the Amendment, *see* Def.'s Opp'n Br. at 3, she actually testified "[she] may have" seen the document before but could not recall. *See* Dep. Tr. (filed under Doc. 23-2) at 29. Ms. Zullo's alleged unfamiliarity with the Amendment, moreover, does not establish that other GHC agents were unaware of it; nor has the Defendant introduced evidence to support counsel's assertion the company "never . . . agreed to" the same. *Compare* Def.'s Opp'n Br. at 4 *with* Jackson v. University of Pgh., 826 F.2d 230, 235 (3d Cir. 1987) (opposition to summary judgment must be based on more than "t[he] bare-bone allegations in [the non-movant's] brief," and summary judgment is appropriate where non-movant "produce[s] no evidence" to refute movant's evidence) (citations and internal quotations omitted).

only upon the execution of the document by all signatories") (footnote omitted).[2]  The Defendant has leveled no meaningful statute of frauds or similar challenge, and its failure to sign the amendment is not dispositive.

Furthermore, GHC has not (and cannot) dispute that the parties' performance continued beyond the expiration date of the original Contract.  *See* discussion *supra*.  Nor has the Defendant introduced evidence that it refused to pay CSX the rate increases specified in the Amendment; if anything, GHC's brief appears to indicate the contrary.  *See* Def.'s Opp'n Br. at 4 (suggesting GHC continued to "pa[y] invoices" after Amendment).  The Defendant's continued performance under the Amendment further undermines its more recent disavowal of the same.  *See, e.g.*, Ragan v. AT&T Corp., 824 N.E.2d 1183, 1188 (Ill. App. 2005) ("silence can constitute an acceptance of an offer when it is reasonable, because of prior dealings or otherwise, that the offeree should notify the offeror if he does not intend to accept the offer"; thus, for example, "a party's continued use of a checking account overdraft privilege after a notification of an increase in its interest rate constituted an acceptance of the new interest rate") (citations omitted); Horizon Sec. & Vault Complex v. BFI

---

[2]  In light of the parties' failure to address the choice of law issue, the court may apply the law of this forum.  The undersigned has no reason to believe that the laws of Virginia or Florida (CSX's place of incorporation and PPB, respectively) would materially differ.

Waste Sys. of North Amer., 2003 WL 22872097, *2 (E.D. La. Dec. 1, 2003) (contracting party consents to "price increases when it continue[s] to pay the periodically increasing invoices without question or complaint") (collecting cases).

In sum, the Defendant has failed to sufficiently refute CSX's evidence that the Amendment became part of the parties' agreement and governed their dealings after July 1, 2003. For the purposes of mediation or trial, then, GSC should be precluded from arguing that the terms of the Amendment are inapplicable.

The Defendant also should be precluded as a matter of law from seeking setoff(s) based on CSX's alleged "tardiness in moving" GSC's product. As noted above, the Contract provided that "[a]ny claims for loss, damage or delay" were governed by 49 U.S.C. § 11706 and 49 CFR § 1005. *See* discussion *supra*. The CFR in question lists, among other things, "[m]inimum filing requirements" and time limitations regarding claims for loss, damage or delay. *Id.* at § 1005.2(a). GHC has failed to show compliance with the statutory/regulatory scheme incorporated into the parties' agreement, and its recent claims of "tardiness" cannot justify an offset.

These things aside, the Defendant has identified issues precluding the entry of summary judgment on damages. First, GHC complains regarding the assessment of interest for its failure to

timely pay. *See* Def.'s Opp'n Br. at 4. As counsel asserts, interest is not addressed in the original Contract. *Id.* And while the Amendment contemplates the assessment of "finance charges" for late payment "pursuant to CSXT Tariff 8100 Series," CSX has failed to provide the referenced document(s). *See generally* Pl.'s Motion papers.

Next is the action filed by Canadian National against GHC in the Eastern District of Pennsylvania. *See* Def.'s Opp'n Br. at 4. Counsel has attached documentation indicating that said entity arbitrated and took judgment against the Defendant in the amount of $29,400.00. *See* Civil Judgment entered Jan. 21, 2005 (filed under Doc. 23-2).

As referenced above, Canadian National was added as a carrier under the Amendment. Defense counsel represents that its charges have been billed here, and the court cannot decipher from the Plaintiff's invoices whether such charges were included. Presuming Canadian National took judgment regarding charges included in CSX's bills, allowing such claims to proceed here would threaten an impermissible double-recovery.

HSC also complains regarding charges made on behalf of Transflo Corporation, which according to counsel's research is a "stand-alone entity" that "provides offloading railyard services." *See* Def.'s Opp'n Br. at 4. A comparison of CSX's and Transflo's invoices reveals striking similarities, including the

same billing font and format and an identical mailing address. *See* invoices (attached under Doc. 22-7); *see also* http://www.csx.com/?fuseaction=customers.transflo (Transflo is "a subsidiary of CSX Corporation"). In any event, the court has insufficient information to determine whether Transflo's charges are covered under the Contract or the Amendment thereto. *Compare* Contract at 3 (contemplating assessment of "[a]ncillary charges . . . contained in CSXT Tariff 8100(Merchandise)/8200(Coal)-Series as of the date of shipment tender shall apply") *with* Pl.'s Motion papers (failing to supply referenced document(s)).

Finally, HSC claims to have paid some of CSX's current charges "pursuant to a separate agreement and payment plan." Def.'s Opp'n Br. at 5. Having reviewed counsel's supporting document, the undersigned cannot derive any meaningful information from the same. *See* Doc. 23-2 ("Page 15 of 34"). At mediation, opposing counsel should be prepared to discuss whether there was a separate payment agreement and whether CSX's current demand accounts for payments made thereunder.

In conclusion, there are far too many "loose ends" for the undersigned to recommend the entry of judgment in a certain amount.[3]  Thus, while the Plaintiff's Motion for Summary Judgment

---

[3] The District Court should reject CSX's argument that the Defendant, through the testimony of GHC agent Jillian Strimel, has admitted to owing at least $150,000. *See* Pl.'s Br. at 3. Ms. Strimel's testimony is quoted out of context and, reading the evidence in a light most favorable to the non-movant, she was explaining only that her company

should be granted on liability, it should be denied regarding damages consistent with the analyses above.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by July 6, 2007.  Responses to objections are due by July 16, 2007.


June 20, 2007

                                               Francis X. Caiazza
                                               U.S. Magistrate Judge

cc (via email):

Dory L. Sater, Esq.
Kenneth Jay Grunfeld, Esq.
Bernard C. Caputo, Esq.

---

had received CSX invoices demanding that amount.  *See* Dep. Tr. (filed under Doc. 22-10) at 22-23.